IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MERCER ADVISORS, INC., | : | CIVIL ACTION |
| MERCER GLOBAL ADVISORS, INC., | : | |
|     Plaintiffs, | : | NO.  13-4151 |
| | : | |
|     v. | : | |
| | : | |
| CHRISTOPHER BRONSON, | : | |
|     Defendant. | : | |

## MEMORANDUM

BUCKWALTER, S. J.                                                                                                  August 29, 2013

      Plaintiffs are Mercer Advisors, Inc. and Mercer Global Advisors, Inc. (hereafter "Mercer").  The defendant is Christopher Bronson (hereafter "Bronson).

      Mercer and Bronson entered into a valid and enforceable contract (Lifestyle Advisor Agreement) on May 24, 2004 (Plf. Ex. 5).  The contract provided in part as follows:

> 4.5  <u>Non-Solicitation of Protected Company Associates and Employees</u>:  In order to safeguard Protected Company's Confidential Information and trade secrets and the relationship Protected Company has developed with its Protected Company Associates and employees over many years and with great expense, Employee covenants and agrees that the Employee will not at any time during the term of this Agreement, or within twelve (12) months following the termination of employment with Employer, directly or indirectly, whether on his own behalf or on behalf of any other person or entity, solicit the business of any Protected Company Associates or Protected Company employees.  Employee expressly acknowledges and agrees that this non-solicitation clause is necessary and appropriate to protect the legitimate business interests and Confidential Information of Protected Company.

      On July 12, 2013, Bronson effectively terminated his employment with Mercer by tendering his resignation (Def. Ex. 15).  Immediately thereafter, Bronson breached the above

quoted provision.  *See* testimony of Bronson in general, and specifically, N.T. 7/31/13 at 120-122.

As a result, Mercer in its post-hearing brief has stated that it seeks only modest and reasonable restraints.  As stated on page 41:

> Mercer has not sought to prevent Bronson from earning a living, and Bronson himself testified that his "worst case" scenario even if he cannot take Mercer's clients is that he earns $180,000 annually at Archetype with the opportunity to earn a lot more than that if he is as good as he says he is at attracting and pleasing new clients. (Tr. Vol. 1, p. 146; Pl. Ex. 17).  Rather, Mercer seeks only to protect its client relationships and its multi-million dollar investment in those client relationships, and to enforce the lesser non-solicitation restriction that prohibits Bronson from exploiting the relationships that Mercer enabled him to develop with Mercer's client base by diverting those clients to Archetype.

In addition, Mercer acknowledges in effect that Bronson is fully able to pursue his life's work provided he does not solicit Mercer's clients for the remainder of the 12 months, which ends July 11, 2014.

To obtain such an injunction, Mercer must show the four well-known factors:

(1)     Likelihood of Success on the Merits

The court has already stated that there was a binding and enforceable contract between Mercer and Bronson and in so doing, accepts the arguments of Mercer and rejects those of Bronson with regard to the validity of the contract.  No one disputes the fact that Bronson violated Section 4.5 of the contract.

Thus, likelihood of success is clear.

(2)     Plaintiff Will Suffer Irreparable Harm

Two witnesses testified on this subject:  Donald Calcagni and David Barton.  The latter's testimony was a bit hyperbolic, but did make the point that a damage award may not be

sufficient to save the business if a large flight of CFP's leave because, in effect, the non-solicitation agreement has no bite.

Calcagni was quite firm in his belief that the type of solicitation of Mercer clients that Bronson was involved in has and will damage Mercer, beyond just the loss of revenue (N.T. 7/31/13 at 59-60). Despite some scepticism expressed by the court, he remained firm in his belief that the loss of client confidence and good will could not be calculated into money damages (N.T. 7/31/13 at 62).

There was no testimony offered to rebut this opinion of Calcagni and the court accepts it in finding that Mercer will suffer irreparable harm.

3. That Granting Preliminary Relief Will Not Result in Greater Harm to Bronson, the Non-moving Party

It is clear that plaintiff is only seeking, in its words "modest and reasonable restraints." Bronson can continue in his present and past occupation so long as he does not solicit Mercer clients up to July 11, 2014. At worst, according to Bronson, he could be stuck at $180,000 until he starts acquiring new clients for himself (N.T. 7/31/13 at 146). While this apparently is less than Bronson is used to making, it is hard to view this as a greater harm than what Mercer may suffer.

4. That the Public Interest Favors Such Relief

While this factor is rarely developed in these cases, it seems reasonable to conclude that the public interest favors the enforcement of contracts entered into knowingly and willingly between competent parties.

An order follows.